Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, counsel. We are prepared to hear argument in 19-2222, Casa De Maryland versus Donald Trump. I want to say we face a set of challenging circumstances this spring and I appreciate everybody's patience and we are delighted to have you before us today and let's proceed with argument and Mr. Sinzak, would you like to begin, please? Thank you, Your Honor. May it please the Court, Jerry Sinzak, appearing on behalf of the United States. The District Court's injunction is flawed and should be set aside. As a threshold matter, Plaintiff Casa De Maryland lacks standing to pursue its claim against the rule. Casa alleges that it has had to divert resources away from pursuing, for example, healthcare advocacy and other policy efforts to educating its members about the rule. This Court held in Lane versus Holder that such voluntary diversions of resources are insufficient to confer standing upon an organization. Accordingly, for the reasons articulated in the Lane case, Casa lacks standing. Plaintiff's claim also fails on the merits. As the Ninth Circuit explicitly held, the rule is easily a reasonable interpretation of the public charge provision. In 1996, Congress made clear that in amending the immigration and welfare laws, it sought to ensure that aliens would not rely on public benefits to meet their needs and public benefits would not serve as an incentive for immigration to this country. On the standing point, initially, the question I had is, how do you distinguish this case from Havens Realty? Yes. What the Supreme Court has said in Havens Realty is that there must be a perceptible impairment of an organization's ability to carry on its activities. And the Court concluded that one that engages in a certain market, combating discrimination in a certain market, their activities can be impaired, although they hadn't necessarily established that at the time, can be impaired by discriminatory practices. But what this Court made clear in Lane is simply diverting resources from one activity to another is not a perceptible impairment. And that's all that Casa has alleged here. The only example they've given of actual harm that they've experienced is that they've diverted their resources from... So this is all a matter of degree? Well, I don't know that diversion of resources alone would ever be sufficient, that there has to be some kind of impairment. And I think the Pacific Legal Foundation case is a good example of that, where the rule made it more expensive for an organization to participate in an agency rulemaking, which is what their normal activity was. And therefore, there was an actual perceptible impairment of what they were trying to do. But here, all that Casa has alleged that they're trying to do is educate members about the various rules and immigration policies. If the organization lacked standing, the individuals in the case would still have standing, would they not? Well, I mean, I think we would agree that an individual who could show that they were imminently harmed by the rule and subject to it and so forth, yes, we would agree that... Your view is not that no one has standing. Your view is that the case for individual standing is stronger than the case for organizational standing. That's correct, Your Honor. In fact, yeah, we would anticipate aliens would have standing, certainly if they were removed or declared inadmissible as a public charge, they would have standing. And an organization might have standing in a representational capacity if they could identify members and meet the other representational standing requirements. But they haven't done that here, and we don't think they've identified any members or individuals who are subject to the rule either. Counsel, this is Judge King. Judge Grimm only ruled on organizational standing, is that correct? That's correct. So if we agree with you on the organizational standing issue, that they lack it here, what do we do? Well, then, in that case, I think there is no basis for concluding on the record, and certainly plaintiffs have only argued in a footnote that they might have representational standing or that the individuals might have standing. So I think that argument isn't properly presented. So I think you would have to conclude that the organization lacks standing, and that's the only plaintiff who obtained an injunction in this case and would have to reverse on that ground. And then if the district court wanted to reconsider standing of other parties or whatnot, or their request for an injunction, it could do so. Now, was there not an amended complaint filed that put the city in it or something? Yes, I believe the city has joined the case, but as of present, they haven't sought an injunction as far as I know, and certainly the court hasn't granted them one. Is it your position that that complaint is not part of the record on appeal? That's correct, Your Honor, and we would, you know, I don't know what specific allegations the city of Baltimore has made. You know, we've contested the standing of other cities and other litigation in other circuits, so I assume we would also object to their, you know, to their standing. Your position is you don't have to deal with that today. Exactly. This is Judge Edimeyer, and I'm wondering whether the complaint, where it alleges the status of the individuals, whether the allegations of the complaint are sufficient to justify standing along the lines that Judge Wilkinson had asked. In other words, if we agreed with you on CASA, don't we still have to confront the notion that the individual plaintiffs are plaintiffs, and they have alleged circumstances that apparently puts them at risk under this rule? I mean, Your Honor, certainly could address it. I mean, plaintiffs have so far, you know, in their briefing only addressed it in a footnote, which obviously this court can consider that waived, but if you did want to address it and look at the allegations, we don't think those allegations are sufficient to show that they face any imminent threat of harm. I mean, these are individuals who, there's no suggestion that they are using public benefits or would use public benefits. They're not even, I don't think there's an allegation that they're planning to imminently adjust their status, which would mean, you know, they're not imminently subject to the rule, and nor is there any reason to think that they wouldn't, that they would meet, or that they would be considered a public charge under the rule, given that they're both young and, you know, in college and employed and so forth. And that's the example, given in the rule itself, of a person who wouldn't be likely to be found a public charge. So, you know, I don't think the allegations that those individuals make is sufficient to show that they face an imminent threat of injury from the rule. Well, I think the case for individual standing is a bit stronger in looking over these complaints than for organizational standing, but turning to the merits, and, of course, the merits have been fully briefed and discussed here. How can you determine with this new rule, because this is a question of admissibility rather than deportability, so we're looking, we're making a future forecast with this rule, and how can you determine with any certainty whether someone is likely to receive 12 months of public benefits over a 36-month span at any point in their life? I mean, isn't, are you guilty of a wild guess, or is this a shot in the dark? It seems to me to involve a very difficult predictive judgment. Yes, you're right. I mean, obviously the statute itself requires the agency to determine, you know, whether a person will be a public charge at any time. And so it's always, in a sense, been a predictive exercise, you know, even under the old rules, the 1999 guidance, which was about cash benefits. But, you know, in terms of the rule itself, I think one of the main thrusts and the purposes of the rule is to set forth a framework that identifies, and that's never been done before, that identifies the factors that an adjudicator should consider, and within the rule itself, the lengthy explanation is a justification for each of the factors that are listed, as, you know, bearing on the question of whether someone is likely to use public benefits in the future. So, you know, whether, we'll have to wait and see as applied, you know, the type of circumstances, but the rule certainly sets out examples of individuals who will be deemed likely to be a public charge, individuals with serious medical conditions without a history of employment, you know, with past usage of benefits, for example, if that comes up, and so forth. So, you know, the idea behind the rule, in part, and there isn't a challenge really to the, you know, to the, whether the application will be arbitrary or not, but. Are you saying that the rule specifies guidelines for the application by these officials? It does. Yes, exactly, Your Honor. It lists a number of factors that they are to consider in evaluating whether. But all that is within this 12 of 36 rule. It's all within the rule, exactly. It's, you know, the statute. That 12 of 36 are the main points, right? Right. So the idea is that we're trying to identify someone who will. Is it fair to say that that 12 and that 36 were just pulled out of the air? No, Your Honor. The 12 months was based on looking at studies of benefits usage, and this is discussed in either the proposed rule, or actually I think it's discussed in the actual rule itself. Was determined based on a look at usage patterns and studies governing usage patterns, and a determination that, you know, people who use it for at least 12 months tend to use it for much longer than that, and there are a number of people who use it for less than that, and the agency determined that. If you are using it for less than that, then you are just temporarily or intermittently using it. And some of the things that were to be counted, or could be counted, are items or benefits that have never been counted as part of a public charge before. That's true, Your Honor, that they are not, but they are. I do want to emphasize that there are only three, at least on non-cash benefits, which are the new benefits, there are only three benefits that are being considered here in the universe of possible public benefits, and they go to the means-tested benefits that go to basic necessities of food, health care, and housing, Medicaid, with exception to the SNAP program, and public housing benefits. So the agency really is narrowing it down to three benefits that are going to the basic needs of individuals, and that's consistent with Congress's expressed intent that aliens admitted to the country not rely on public benefits to meet their basic needs. How does your rule, why is this rule superior to the 1999 field guidance and the primarily dependent standard? What makes this a better rule than the primarily dependent standard that had prevailed for a number of years before that? Why is this a superior means of defining the public charge provision? Right, so the 1998 guidance, it defined primarily dependent as either long-term institutionalization or a dependence on cash benefits for income, but what the agency found, and I think scientists would agree, is that that applies to a very limited number of individuals, and so there were not very many people deemed likely to become a public charge, and what the agency determined is that Congress was concerned about more than just individuals who are relying on cash benefits or likely to be institutionalized, that it was concerned with a more general reliance on public benefits to meet basic needs, and so it believed it should expand the definition to capture some other ways the government provides benefits to people, housing benefits, food benefits, and health care. Excuse me, do you contend that your rule is the only correct interpretation of the public charge provision, or is the primarily dependent standard also a correct interpretation of the public charge provision? In other words, I'm wondering whether you see your rule as the definitive interpretation of public charge, or even as the best interpretation of public charge, or whether the real guidance is also a perfectly reasonable interpretation of the public charge provision. I guess our position is that the term is ambiguous, and that Congress has left the term's interpretation to the discretion of the executive branch, and there's much evidence of that in the legislative and statutory history, which I could go through, but then to answer your Honor's question, I think what we're advocating is that this is a reasonable interpretation, and the 1999 guidance may also have been a reasonable interpretation, although as the agency explained in the rule itself, we think this rule is more consistent with Congress's intent in 1996 to ensure that aliens admitted to the country didn't come for the purpose of obtaining benefits and don't use benefits once they have. I just want to be clear. You're not contending that your particular rule is the definitive interpretation, or even necessarily the superior interpretation of the public charge provision, and that let's suppose, arguendo, a new administration came into power in next January, it's your position that it would be perfectly fine to return at that point to the 1999 field guidance standard, the primarily dependent standard. In other words, it would be, you're not saying that, I want to make sure I understand you on this point, you're not saying that a new administration could not change this its first day in office after going through the proper procedures that go with a rule change. There would be no bar to a different interpretation of the rule in 2021. Yes, your honor, we agree with that statement that there is not a bar to interpretation, we're not suggesting that this particular interpretation is compelled by the text and can't be changed. Now, part of the rationale for adopting the rule is that it was, in this administration's view, a better reading of the statute and more consistent with congressional intent. So in that sense, we think it is superior to. This 12 and 36, nowhere in the statute is it. Right, that's not, which is why, again, we're, yeah. That was just created out of a whole cloth. Well, I mean, you know, it was a threshold that was determined. It's your position that those two numbers could be 6 and 60, just as well as their 12 and 36. If they could be 12 and 12 benefits in 36 months or six benefits in 60 months, five years. Well, I mean, they made up a couple of numbers and stuck them in there. Well, I wouldn't say they made up a couple of numbers. I mean, the agency did understand that, you know, a temporary or intermittent use of benefits wouldn't suffice and that, you know, there are individuals who need it on a very temporary basis and then did look at studies to determine at least the 12-month threshold. If you had that in the 1882 statute or in the 1999 guidance book, you'd be in much better shape, I'll tell you that. Well, you know, yes. I mean, the overall point, I guess, we agree that it is subject to revision, you know, but that those particular thresholds were determined through, you know, looking at benefits usage patterns and so forth. This is Judge Niemeyer. I guess it's your position that like any line drawing, you can draw lines at anywhere and the discretion is whether the line is drawn in an area where it's reasonable to conclude that the person would be depending on public resources and would be burdening the public benefit system. That's correct, Your Honor. Yes, that's a very more articulate way of saying yes. We agree that, you know, again, the overall thrust is to come up with a test. It's made out of whole cloth, but it's made out of whole cloth in drawing a line somewhere between one single benefit and total consumption of benefits. In other words, 100% reliance. And so the idea is to pick some place in between that balances the two extremes. I suppose that's the conclusion one would draw. Yes, exactly. I guess this is where the arbitrary and capricious standard in the Administrative Procedure Act has some applicability. If you were to say that someone was primarily or that someone was likely to become a public charge based on a single month or two months of receiving public benefits, you would agree that that slight a period of time on public benefits would be arbitrary and capricious or an unreasonable interpretation of the public charge provision. But to follow up on a point my colleague Judge Niemeyer made, I gather your position is 12 months out of 36 is not a trivial period. And because it's a substantial period of time, it's not an arbitrary and capricious determination. I'm not sure if that's your position, but I was interested in the point that Judge Niemeyer made on this. Go ahead and answer the question I'm interested in, because I think Judge Niemeyer raised a good point about this not being just plucked out of thin air. Eventually, agencies run up against an arbitrary and capricious standard or an ultra-virus problem. And I gather you would say that it would if instead of 12 months, if it were one or two months out of the next 36, there would be a point where the rule would become highly draconian in a way that would not be consistent with the public charge provision. Am I correct about that? Yeah, I think that is generally correct. And certainly the agency on the rationale it gave here, it made clear that it understood historically the rule not to apply to people who are just using very temporary or intermittent benefits. And so certainly on that rationale, there would be no basis for concluding that one month of benefits would qualify someone as a public charge. In addition, there are certain benefits like public schools that are available to everyone, and we're not talking about those types of benefits. All right. I'm going to add... But you are not doing it strictly on a historical basis. You're doing it on a futuristic speculative basis. That's the point I said when I indicated I thought it was being made up out of whole cloth because you just created it. You created them, you pull it out of the air and say this is what we're going to use. Well, look, doing it historically, you've got a better argument. But that's not what you're arguing here. Totally what you're arguing. You know, I guess our historical view is that the term has always been subject to interpretation and open to interpretation in that, you know, the agency made an attempt here to set a threshold that it believed was greater than a de minimis amount of benefits or a temporary amount of benefits and consistent with usage patterns. How did you arrive at the 12-month figure? I think that's what Judge King is... Right. So I think there is, you know, I can look up the specific sites, but it is discussed at length in the rule itself, the final rule, about, you know, the agency looked at usage patterns, how many people use benefits for a year, if they use them for a year, are they likely to stay on them for a long period, and, you know, how many use it for just a temporary point in time and that sort of thing. And so it derived the 12 months by kind of concluding that once you've shown that you've used it for 12 months, you tend to stay on it for a longer period of time or to use it regularly as opposed to people who are using it less than 12 months. What is the basis for that statement? I'd have to look. I can get, you know, on rebuttal perhaps I can get the particular point in the rule where it discusses that, but there is a section of the rule, the preamble to the rule that identifies, you know, how they went about determining the 12-month threshold. Is there some empirical basis for it? Yeah, there are studies of benefits usage by, you know, benefits organizations and benefit agencies to determine, you know, how long people stay on benefits and how much they use and so forth. And, you know, the Notice of Proposed Room Meeting also has an extensive discussion of how much, how extensive, how much on average a person uses of various benefits and so forth as well. But the 12 months is specifically discussed in the rule. Judge King, do you have some further questions? No, sir. Appreciate it. Judge Niemeyer, do you have further questions? Not now. Okay. Well, thank you, Your Honors. All right. Mr. Backer, we would be happy to hear from you. Good morning, Your Honors. May it please the Court, Jonathan Backer for the plaintiffs. For over a century, the public charge in admissibility grounds has been interpreted narrowly and in accordance with its plain meaning to exclude only noncitizens who are likely to rely on the government to meet all of their basic needs. DHS's public charge rule departs radically from that settled meaning by denying noncitizens admission based on what is, in DHS's own words, an inherently subjective prediction about whether noncitizens are likely at any point in the rest of their lives to receive only a small amount of supplemental public assistance for even a short period of time. The district court properly held that this rule is contrary to law. The meaning of the term public charge was clear when it was first enacted in 1882, and it has retained that meaning over more than a century of court and agency decisions and repeated recodifications by Congress. In 1882, contemporaneous dictionaries, the statute's provision of temporary assistance to arriving immigrants, and the nature of public assistance at that time, confirmed that only those primarily dependent on the government were public charges. In the early 20th century, this definition was the foundation of the Supreme Court's decision in Gagow and other lower court decisions. But what you have, this was adopted in 1882. That's a long time ago. It's basically around the same year that Coca-Cola was founded, which is a long time back. And over a century or more, well over a century, Congress has not defined the term public charge. It's left it alone. And it has not written into the term public charge a primarily dependent standard. It would have been open and permissible for Congress to do whatever it wanted. If it had wanted to define public charge in the way that you're suggesting, it could have legislated a primarily dependent standard. And it didn't do that. And I'm wondering if Congress's unwillingness or lack of interest or whatever in not defining this term wasn't the result of a series of decisions by the legislative branch stretching well over a century to leave the definition of this term within the purview of the executive branch. Why can't we determine that we've got a somewhat vague term here, public charge, which could mean one of a number of things. But the fact that Congress didn't alight upon a particular meaning and we make of that silence a desire by Congress to leave the executive branch the discretion to fill in the details. I don't think we can, Your Honor. And that's because I think you're right, Your Honor, that to a modern ear, the term public charge does sound ambiguous and strange. I mean, it's a Dickensian word. It sounds like it's right out of Dickens. But if you went back to the 19th century, there was a clear meaning. And the Ninth Circuit in their decision acknowledged that, that in the 19th century, public charge meant someone who was unwilling or unable to provide for themselves in total. And the fact that Congress never provided a definition, that's because it had a settled meaning and that it was reasserted over and over again in court decisions and agency decisions and just in the practicality of what INS and the various enforcement agencies over the years, how they were actually enforcing the provision. So Congress never would have thought that it was necessary to define and statute the primarily dependent standards because in practice, that's the standard that governed in 1882 and had always governed throughout the entire 138 years that this provision has been enforced. Please. I hear what you're saying, but this primarily dependent standard which you are talking about as being in effect for all of these many, many decades, it only appeared in so many words in the 1990 Field Guidance Manual. And as I understand it, the 1999 Field Guidance Manual lacked the status of even a formal rule. And so I'm not sure that this primarily dependent standard has been in effect as long as you suggest it has. And it's not as if Congress was oblivious to this. Are you familiar with the Senate Judiciary Committee Report in 1950? Yes, Your Honor, I am. Well, what I want you to address, it seems to me that that committee report had explicitly before Congress, or at least the Senate, whether it should go further in trying to define public charge. And the report says no, we don't want to go further in defining public charge because we are content to leave the definition of this to the ebb and flow of events and to the interpretation of the executive. So why isn't the silence of Congress over all these years, why doesn't that reflect exactly what this Senate report indicated, which was that we want to leave this within reason to the discretion of the executive? Well, first of all, Your Honor, it's true that the words primarily dependent weren't used in previous BIA decisions or court cases. But the 1999 Field Guidance looked back at the long history that I've described about the public charge provision and concluded that the primarily dependent standard was what had always governed. And you can look at the 1964 BIA decision that was adopted by Attorney General Robert Kennedy. And Martinez-Lopez says that the standard governing public charge is that ordinarily, somebody who's healthy and in the prime of life cannot be considered a public charge. That's just the primarily dependent standard by another word. And as far as the 1950 Senate report goes, I mean, first of all, I'll just note that that's summarizing the views of a five-person subcommittee. So take that for what it's worth. But in addition, what's described there, if you look closely, it's not talking about competing definitions of public charge. It doesn't set forth any competing definitions of public charge. What the report goes through are various different circumstances that might be relevant to a public charge determination. So it talks about assets. It talks about physical disability. It talks about the potential for incarceration of an individual. So those are individual circumstances, any of which could be relevant to the settled meaning of public charge because it's primarily dependent on the government for subsistence. I don't necessarily disagree with that in the sense that what you're suggesting, a perfectly permissible way to define public charge. But might this not be a case in which both you and Mr. Senczak are right? I mean, this might be a case in which you both are putting forward a permissible definition of public charge. And it doesn't – this is not an either-or situation. It's a situation where, you know, you're lined up as adversaries before us today, and yet your views might both be right. And as Mr. Senczak said, if a new administration came in in 2021, they could change it. And that would be a correct interpretation as well. Nobody is saying that the field guidance or the primarily dependent standard is incorrect. We're just – I'm just suggesting that it may not be the only correct way to define this term. Yes, Your Honor. And, you know, we would submit that public charge has a clear definition, just if you look at the dictionary definitions and what was going on in 1882 and what public subsistence looked like then, and that has been carried through throughout history. But the definition put forward by the government is not reasonable by any stretch of the imagination. And just to illustrate that – Can I challenge that just one second at least to have you respond to it? It seems to me that Section 1601 lays out the policy, compelling government policy, talking about persons who might be using public resources is the word they use, and that would burden public benefit systems. And it seems to me that that is not narrow. That is much broader than what you're arguing. Your Honor, Section 1601 was part of Perora, which changed the public charge provision not one jot. Nothing about Perora affected the public charge provision at all. So not only is that just purgatory language, it's just a policy statement, but it's a policy that has nothing to do with public charge. But it's a policy statement that reflects the underlying policy for the public charge statute. In other words, the idea is that immigrants not be attracted to this country for public benefit and that they do not use or burden the public resources is the word they use. And while obviously that isn't the statute itself, it seems to me when Congress says that's a compelling government interest, as they say in that provision, that's something we ought to listen to, isn't it? Of course, Your Honor, and we don't contend that it is not a compelling government interest. It's just that Perora and Congress through Perora affected that policy goal through a number of other means totally unrelated to public charge. It added deeming provisions that attributed a sponsor's income to a non-citizen if they apply for benefits. It added the affidavit of support provision. And it set a number of restrictions that make it difficult for most non-citizens to get public benefit at any point until five years after they've already adjusted status and already had a public charge determination. So Congress pursued the goals that were articulated in 1601 through several different means. There's no reason to attribute those purgatory words in 1601 as related to the public charge provision. But is it fair to look at the statute as a whole in interpreting the public charge provision, particularly this sponsorship requirement, which seems to underscore the fact that self-sufficiency is an important consideration in immigration policy and that requires aliens, no matter what their financial circumstances are, to have sponsors who would reimburse the government for the use of a means-tested benefit? Is it fair to look at the statute as a whole and to take provisions like the sponsorship provision and say that that is supportive of a rule which tries to underscore self-sufficiency as part of a public charge definition? Of course one can look to the whole statute, but I don't think that the Affidavit of Support provision is a particularly probative example of what public charge means in the statute. And that's because it only applies for a limited number of non-citizens. So it doesn't apply at all to diversity visa applicants. It doesn't apply to most employer petition applicants for adjustment of status. It doesn't apply to people who are adjusting based on the petition of a spouse or a U.S. citizen child. And in addition, it only applies for the first five to ten years that a non-citizen is in the United States. So if, as the government suggests, the Affidavit of Support provision is sort of the touchstone for understanding what public charge means, it's an odd way for Congress to dignify that. Well, it must mean something in terms of self-sufficiency and in terms of the ability of an administration, any administration, to define those words. But let me ask a broader question here. Isn't it important to maintain some flexibility in American immigration policy and not have it become overly fixed and rigid? And this term public charge, which has a certain fuzziness to it and a certain ambiguity, at least has the virtue of allowing U.S. immigration policy to remain flexible, not unduly harsh, not unduly permissive, but flexible. I kind of look at it all as an accordion, which goes in and out, and the policy should be like that accordion, sometimes permissive, sometimes restrictive, depending upon the needs of the country, the circumstances on the ground, the results of different elections. But if we try to freeze the definition of this and try to simply fix it and set it in some sort of concrete where Congress has not done so, don't we just harden and rigidify a policy which has to be somewhat flexible simply because the needs of the country change? Yes, Your Honor. And just because the definition of public charge is and always has been primarily dependent on the government for subsistence, that doesn't mean that the agency... Is there anywhere in the statutory history where there's a formula like this 12 benefits in 36 months that they've come up with here in this particular rule? Has that dropped on anything in the statutory history from 1882 to the present day? No, Your Honor. The 1236 standard is nowhere in the statutory history or indeed any of the judicial decisions interpreting the meaning of public charge or any of the agency decisions. And you can really tell that by focusing on the INS publications from the 1950s and 1940s. If you look at the one from 1950 that we submitted in a 28-day letter, that reviewed 3.5 years of deportation decisions under public charge grounds. There were 80 deportation decisions. Every single one, 100% of those, involved people who were institutionalized. And that's a moment that DHS argues is very important in the development of public charge because that's when the INA went into effect. But it's clear that the agency enforcing the public charge provision at that time had an understanding of public charge that is much closer to the primarily dependent standard... Mr. Backer, let me ask you this. In terms of the question of whether this was pulled out of thin air, you don't contest the fact that, at least I didn't see that it was contested, that this rule was adopted in accordance with the procedures in the Administrative Procedures Act. You've taken public comment. You've gone... The government went through the different steps that are procedurally required to precede the adoption of any rule? No, we do not... It was not procedurally defective. All right, if it's not procedurally defective, then that says something about... If the administration or any government conducted a procedurally fair proceeding and took comments and consulted studies and went about investigating the whole area in a thorough manner, how can we then say that the definition it came up with is arbitrary and capricious or somehow ultra-virus? I mean, it may not be the definition that you would want or even that I would want. It's not a question of whether one of us does or doesn't like the rule. I'm just wondering how, if it went through a thorough vetting, how it can be said to be plucked out of thin air, because I think Judge King raises a very interesting point, as he always does, and I want to understand how this can be viewed as simply an arbitrary administrative practice in the absence of some procedural deficiency. Well, Your Honor, of course, the arbitrary and capricious claim is not before the court presently, but you can look to the Fiscal Policy Institute amicus brief that sets forth in great detail how DHS failed to respond to several numerous issues that were brought up in the comments and were not adequately addressed by the agency. I think that the key for this court is understanding that there are outer bounds, that even if a term is ambiguous, the agency cannot go past in defining a term. And here, look at SNAP, for example. An average SNAP benefit is $127. Over 12 months, that means that somebody would receive $1,500 in SNAP benefits. Now, to put that in context... You're going to have to help me with these... Yes, Your Honor. Sorry, I'm talking about food stamps, which is one of the benefits that are part of this... I understand that better than SNAP. Yes, and so someone who is earning income at the federal poverty level, over three years, they would earn $38,000. So we're talking about $1,500, the equivalent of one of the stimulus checks that somebody recently got. Mr. Backer? Yes. It seems to me you raise an entirely fair point and a good point. I just... Isn't the appropriate forum to raise that in? Isn't the appropriate forum to raise that in prior to the adoption of the rule? And I'm sure that points like the one you just raised, which I thought was very good indeed, I'm sure that those were brought before the agency and were considered. Were they not? But, Your Honor, of course there's judicial review over whether a statutory definition, a definition put forward by an agency, is permissible under the statute and it comports with Congress's intent. And what we're arguing is such a broad definition of public charge that would allow $1,500 over 36 months predicted, we're looking at this as a predictive judgment, could be insurmountable to public charge, that just simply isn't what public charge means. And just look at the definition of charge that exists in the 19th century. It's someone who's entrusted to the custody or management of a government. Somebody who is otherwise earning income, $38,000, but gets $1,500 of benefits from the government, that person isn't in the custody of a government. They're not being managed day-to-day by the government. So I understand what Your Honor is saying about the need to air these concerns in notice-and-comment rulemaking, but the job of the court is to look at the statutory definition of these, the term that's been put forward, and consider whether that exceeds the outer bounds of whatever ambiguity the term can bear. And in this case, this is an easy case, Your Honor. Public charge simply doesn't mean what DHS has defined it to mean. Well, I'm glad you find it an easy case, but I just want to say how much I appreciate your argument. I think both Mr. Sinzdak and you have presented some very fine arguments, and I want to ask Judge Niemeyer and Judge King if they have further questions of you. I'm fine. Not at this time. Judge King? I'm fine. Okay. Thank you so much, Mr. Backer. Thank you. Mr. Grogg, you have some time. I understand you're representing the United States House of Representatives in an amicus capacity, and we welcome you before the court and would like to hear what you have to say. Thank you, Your Honor, and thank you very much for permitting the House to participate as amicus in support of appeals today. Without repeating the arguments and helpful discussions that you've had with my colleagues, I'd just like to emphasize four points. First, DHS's rule is impossible to reconcile with the statutory provisions that Congress did enact in 1996 to further a goal of promoting self-sufficiency among immigrants to America. It is implausible that the same Congress that made noncitizens eligible for public benefits after a certain number of years also intended to permit an agency to redefine the term public charge to exclude immigrants who might accept those benefits. Second, ever since Congress enacted the law excluding those likely to become public charges in 1882, the term public charge has always meant those primarily dependent on public support, and it has never included those who received de minimis public benefits. So are you saying that the field guidance and the primarily dependent standard is the only permissible standard? Your Honor, ever since the term entered the immigration laws, it has meant primarily dependent, and we know that from contemporaneous dictionary definitions, from early judicial constructions, from consistent agency interpretations, all the way up through to and including the 1999 field guidance, as the agency explains then. But why don't those words appear in the statute? So I'm glad you asked that, Your Honor. You know, you've had a colloquy with my colleague, Mr. Backer, about why Congress had not defined the term public charge, and the answer is that under established precedent, Congress didn't have to. It didn't have to define the term because it could leave the term undefined on the basis of more than a century's worth of precedent defining it in terms of primary dependence. That's the Helton case that we've cited, the Forest Grove School District case. Yes, but during that whole period, Mr. Grogg, immigration policy didn't remain static. There were ebbs and flows to it, and yet even in the midst of all those ebbs and flows, Congress resisted the pressure or the temptation or whatever to enact a more precise definition. And what I'm concerned about here, I guess, and you as a member of the Alpine legislative branch of government might be concerned about it as well. If we go with your interpretation, I worry that immigration policy is going to be set primarily to a greater extent in the judicial branch of government and removed to a greater extent from the legislative and the executive branches of government. And to my mind, immigration policy is something in which the political branches should take a primary role, and the political branches take a primary role in two respects. One, in the changing or in the flexible definition in the administrative process of public charge, and two, in the continuing ability of the Congress of the United States to amend the statute. I think the Supreme Court has many, many times said that the driving force in immigration policy should be the Congress and the executive and not the judiciary. And if we try to freeze this definition and say, oh, it means one and only one thing, and that's all it can mean, aren't we taking a step in the other direction and inserting the federal judiciary into this whole area to a greater degree than is warranted? Thank you, Your Honor. There is no doubt that the Constitution assigns Congress the responsibility for establishing a uniform rule of naturalization. And the House's concern here is to preserve Congress's ability to reenact a statutory term against the backdrop of that term's settled meaning without the risk that an agency dissatisfied with Congress's policy judgment. Mr. Grodd? Yes, Your Honor. It seems to me that if the position of the House is that public charge has a meaning that is at risk, the solution is for the House to enact a provision that counters what the courts have done or what they may do or what the position is. It's curious to me that the House of Representatives would come to an Article III court and ask the court to construe a statute in the way the House intended when the House can simply say what it intended. And I find the whole thing a little out of balance as to our functions. The House of Representatives is the lawmaking function, and apparently it's the House's position that public charge has a particular meaning, and it can say so. But it seems to me the judiciary is left with construing what has been done in accordance with the principles of the APA and whatever legal propositions are handled. But to leave it undefined and then to come say this is what we meant to a judiciary, the House has many times gone and corrected courts. The Supreme Court has ruled in a particular way in construing a statute, and you find Congress going back and overruling that and making clear what the Congress intended. I'm sort of wondering why that isn't, if you're authorized to be here on behalf of the House, why wouldn't you also be authorized to just take your battle to the House and fix it if it's broken according to the House? Thank you, Your Honor. Yes, certainly the House has a number of tools at its disposal. Here the relevant point is that the House and Congress as a whole in reenacting this term without material change in 1996 was under established Supreme Court precedent adopting the interpretation that has certainly, Judge Wilkinson, to your point, and as recognized in any number of documents, varied but within precise bounds. It has varied only within a general definition of being primarily dependent. If it leaves it undefined, and let's just assume that there's a big change of circumstances that our borders are flooded, can't the agency all of a sudden say, well, we can screw this. The reason our borders are flooded is because people want the benefits of welfare or they want the benefits of this or they want the benefits of that. Can't those changing circumstances authorize the executive to apply the public charge, which is a broad term and covers that, to the current circumstances? It seems to me to say that the House deliberately left public charge undefined because that's the way earlier courts had defined it is hardly the way the legislature should act. If you see a changing condition, you can change the law. You can define public charge. I don't know where we get the authority to say because the House didn't amend it, it therefore has to stay the same. Your Honor, I point you to the 2009 decision from the Supreme Court in the Cuomo versus Clearing House matter. We cited this in our briefs, and I believe the parties had too. So there the question was about the meaning of the term visitorial powers in the National Bank Act like public charge to a modern ear. Perhaps it sounds somewhat foreign or undefined. And what the court held there under the familiar Chevron inquiry was that the presence, I'm quoting now, the presence of some uncertainty in the meaning of that term does not expand Chevron deference to cover virtually any interpretation of the National Bank Act. We can discern the outer limits of the term even through the clouded lens of history. And the same is true here. And it was in reliance on these principles that Congress in 1996 reenacted the term without change. All right, thank you, Mr. Blogg, for your fine argument, and we appreciate your being here. And I'm going to ask my friend Judge King if he has some questions for you, and then Judge Niemeyer if he has further questions for you. Judge King, do you have some questions? No, thank you, sir. Appreciate it. Judge Niemeyer? Yeah, I'd just like to express our appreciation to have the House send an official delegation to visit us and express its opinion. And that's always a nice interchange. So it was good to hear from you. Certainly is. Thank you, Your Honor. Thank you, Your Honor. Mr. Sinsdak, you have a few minutes of rebuttal. We'd be pleased to hear from you. Thank you, Your Honor. I'll just try to keep this brief. I just wanted to go back to Judge King's question about the 12-month standard. There is, as I mentioned, a lengthy discussion, and I have the site here in the Federal Register for the final rule. It's at 84, Federal Register, page 41,359 to page 41,363. And there the agency discusses the various studies, including the Census Bureau's Dynamics of Economic Well-Being Study and a number of others. And it explains how it came up with the 12-month standard based on those studies and other analysis. And then it starts with a couple of points that have been already raised. We've covered a lot of this ground already. But as Your Honors have mentioned, Congress has at no point in the history of the legislation ever indicated, given any indication, that it thought that the term public charge had some sort of fixed, settled meaning. And, in fact, from the 1950 Senate report and from the statute's text itself, we know that Congress was aware that there were varied interpretations and wanted to leave it to the discretion of the executive branch. And, of course, it has never defined the term. I'd also point out that even the 1999 guidance, which set forth this primarily dependent standard, indicated that the term was ambiguous and it was offering up just one reasonable interpretation of the statute. And, of course, as our brief discusses at length, there were varied definitions given over time. And the reason, presumably, Congress left it up to the discretion of the executive branch was for the executive branch to adapt to the circumstances of a changing immigration and changing welfare policies and so forth. And this provision reflects an exercise, a reasonable exercise of that discretion. I would just, one very minor point, the opposing counsel mentioned that people who are healthy in the prime of life would not be considered public charges previously. Well, that's also true under the rule. In fact, the rule indicates, as an example of someone who wouldn't be a public charge, someone who is healthy in college and so forth. So there's no reason to conclude that this is going to result in an average healthy person being deemed a public charge. So that is all I have. If your honors have any further questions, I'm happy to address anything else that came up during the argument. All right. Well, that concludes our argument. When all three of you have given such a fine argument and obviously have come before us with a great deal of preparation and thought, it's really disappointing to me that we can't come down and shake your hands the way we normally do at the end of every argument in the Fourth Circuit. But I hope that you will understand our sincere appreciation for the quality of your advocacy in what is a very important case. And thank all three of you so very much and please stay safe. Now I will ask the courtroom deputy, the court will take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King